*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EMILY FOSMORE,

        Plaintiff-Appellee,

v

KALI ANN ROTH,

        Defendant,

and

PROGRESSIVE MICHIGAN INSURANCE COMPANY,

        Defendant-Appellee,

and

FARMERS INSURANCE EXCHANGE,

        Defendant-Appellant.

UNPUBLISHED
February 17, 2026
1:25 PM

No.  372826
Macomb Circuit Court
LC No.  2023-003083-NI

Before: FEENEY, P.J., and GARRETT and BAZZI, JJ.

PER CURIAM.

In this priority insurance action, defendant-appellant, Farmers Insurance Exchange (Farmers), appeals by leave granted[1] the trial court's opinion and order granting the motion of defendant-appellee, Progressive Michigan Insurance Company (Progressive), for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), and denying Farmers's countermotion for summary disposition under MCR 2.116(I)(2) (opposing party entitled to

---

[1] *Fosmore v Roth*, unpublished order of the Court of Appeals, entered May 28, 2025 (Docket No. 372826).

-1-

judgment). For the reasons set forth in this opinion, we reverse and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of injuries plaintiff sustained while she was a passenger in a vehicle involved in an accident. On June 8, 2023, plaintiff was a passenger in a pickup truck owned and operated by defendant, Kali Ann Roth, in Warren, Michigan, when Roth disregarded a red traffic signal and collided with two other vehicles. During her deposition, plaintiff acknowledged that she and Roth consumed alcohol before the accident, amounting to "about half of a pint and maybe three or four White Claws" each. Plaintiff further recalled that Roth was speeding and "weaving in and out of traffic" before the collision. Plaintiff explained that Roth drove through a red light and as the vehicle was approaching the second red light, plaintiff yelled for Roth to stop. However, Roth drove through the red traffic signal and impacted two other vehicles at an estimated rate of 80 to 90 miles per hour.

At the time of the accident, plaintiff did not have no-fault insurance coverage. Since 2019, plaintiff lived with her mother, Jane Fosmore (Jane), in Warren, Michigan. Plaintiff's husband and their minor child additionally resided with Jane. On April 13, 2023, Jane executed an application for insurance with Progressive. She represented on the application that she was the only household member of driving age. The policy provided $50,000 in personal protection insurance (PIP) benefits. The policy contained a fraud or misrepresentation provision, which permitted Progressive to rescind the policy if there was false information on the application that would alter Progressive's exposure to liability.

When plaintiff sought to collect no-fault benefits under the policy after the accident, Progressive rescinded the policy and issued a letter informing plaintiff that there was no coverage for her claims due to fraud or misrepresentation as "it was determined there were 3 additional residents in the household that should have been on the total resident count dating back to inception." A litigation underwriting specialist employed by Progressive contended that "had the proper disclosure of Jane Fosmore's resident relatives been made to Progressive at the time of inception the premium would have increased 24.5% from $3,050 to $3,798." Plaintiff further sought no-fault benefits through the Michigan Assigned Claims Plan (MACP); her claim was assigned to Farmers.

During her deposition testimony, plaintiff expressed that on the date of the accident, the only person in the household who owned a motor vehicle was Jane. Plaintiff explained that her husband was in the process of finalizing payments on one vehicle, but that he did not own it at the time. Plaintiff further stated that Jane possessed a Chevrolet Impala and a Pontiac Grand Prix, and that she was aware Progressive insured those vehicles. Plaintiff admitted to driving the Grand Prix before the accident. Plaintiff believed that Jane acquired the Progressive policy six months before the accident, but plaintiff was unaware of the exact date or the means in which Jane obtained the policy. Plaintiff did not assist Jane with completing the application for the policy, and she did not ask Jane to add her as an insured on the policy. Plaintiff thought that all household members were shielded by the policy because Jane indicated that "everyone in the household should be covered" after the accident. Plaintiff did make payments to Jane for insurance, but she did not know the dates or amounts of those payments.

In September 2023, plaintiff filed a complaint, asserting a claim of negligence against Roth, a claim for first-party no-fault benefits and uninsured and underinsured motorist benefits against Progressive, and a claim for first-party no-fault benefits against Farmers. Farmers filed an answer generally denying the allegations and advancing as affirmative defenses, in part, that plaintiff was not entitled PIP benefits pursuant to MCL 500.3172 as "other insurance" may be available to plaintiff, and plaintiff was ineligible for benefits under the MACP from Farmers. Progressive filed an answer neither affirming nor denying plaintiff's allegations, and asserting as an affirmative defense, in part, that plaintiff's claims may be barred due to fraud or material misrepresentations made in support of an application for insurance.

Progressive subsequently moved for summary disposition under MCR 2.116(C)(10), arguing that an analysis of the factors enumerated in *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 411; 952 NW2d 586 (2020),[2] weighed in favor of rescission of the policy as to plaintiff, who was an innocent third party. Progressive asserted that the first and fourth factors favored rescission, the second and third factors weighed against rescission, and that the fifth factor was inapplicable. Progressive further advanced that while the factors were split, the fact that plaintiff had an alternate means of recovery through the assigned insurer must be weighed more heavily than the other factors, which tipped the scale in favor of rescission. Progressive asked the trial court to grant the motion and dismiss Progressive from the case.

Farmers responded and filed a countermotion for summary disposition pursuant to MCR 2.116(I)(2), arguing that the *Pioneer* factors did not favor Progressive's rescission of the policy as to plaintiff. Farmers asserted that the first, second, third, and fourth factors all weighed against rescission, and that the fifth factor was inapplicable to the case. Regarding the fourth factor, Farmers advanced that the MACP was always the insurer of last resort, and in this case, Progressive was clearly in the highest order of priority to pay plaintiff's PIP benefits. Farmers requested the dismissal of plaintiff's claims against it.

In May 2024, the trial court held a hearing regarding the parties' pending motions; the parties advanced arguments consistent with their respective filings. Progressive argued that it had no reason to investigate Jane's household members until plaintiff, who was not listed on the policy, attempted to make a claim under the policy. Progressive further contended that if plaintiff and her husband had been disclosed as household members, the premium would have increased by 25%.

---

[2] This Court adopted the following nonexclusive list of factors to consider when determining the rescission issue regarding an innocent third party:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Pioneer*, 331 Mich App at 411.]

Progressive asserted that because plaintiff filed a claim with the MACP, there would be no harm if Progressive did not cover plaintiff for the subject accident. Farmers responded that the policy should not be rescinded as to plaintiff, and that there was no evidence that plaintiff had any part in the alleged misrepresentations in the policy, nor did she contribute to the accident. Farmers advanced that requiring plaintiff to acquire coverage under the MACP was against public policy because there was an available insurance policy under which she could receive benefits. Progressive replied that there was no indication that Progressive would have been able to discover the misrepresentation before the accident, and that plaintiff should not benefit from Jane's material misrepresentation and receive coverage that was never bargained for with Progressive.

During the motion hearing, Farmers disagreed that Progressive was unable to discover the misrepresentations before the accident considering that Progressive quickly uncovered them as soon as it investigated the claim. Farmers additionally maintained that there was no evidence that plaintiff had anything to do with the misrepresentations, and plaintiff was "an innocent third party in the classic sense." Plaintiff did not take a position as to whether Progressive was entitled to rescind the policy. Following the parties' arguments, the trial court took the matter under advisement.

On June 28, 2024, the trial court issued an opinion and order granting Progressive's motion for summary disposition and denying Farmers's countermotion for summary disposition. The court first determined that Jane made a fraudulent misrepresentation on the pertinent policy application regarding the number of resident relatives of permit or legal driving age, which barred Progressive from charging an appropriately higher premium. Regarding the equity factors delineated in *Pioneer*, the trial court resolved that the first, second, third, and fourth factors favored rescission. The court opined:

> In the instant matter, defendant Progressive did not have any duty to uncover Jane Fosmore's fraud before the subject accident . . . . Plaintiff is Jane Fosmore's daughter; plaintiff was aware of the need for no-fault insurance, was aware of defendant Progressive's policy and made payments on the policy to Jane Fosmore as if she (plaintiff) had coverage. Plaintiff chose to consume liquors with Roth, get into Roth's vehicle and remain in the vehicle despite Roth's erratic driving. Plaintiff has an alternate avenue of recovery if defendant Progressive's policy is not enforced. Consequently, a balancing of the equities favors rescission of the policy in its entirety as to plaintiff.

On July 19, 2024, Farmers moved for reconsideration on the basis of this Court's recent opinion in *Van Dyke Spinal Rehab Ctr, PLLC v USA Underwriters*, ___ Mich App ____, ___; ___ NW2d ___ (2024) (Docket No. 365848). Farmers asserted that the trial court was required to balance the equities to determine whether plaintiff's medical and service providers were innocent third parties of any alleged misrepresentations made by Jane. Farmers further contended that the balancing of the equities did not favor Progressive's rescission as to plaintiff.

On September 19, 2024, the trial court entered an opinion and order denying Farmers's motion for reconsideration. Regarding the balancing of the equities as to plaintiff, the court considered Farmers's position that the court failed to properly analyze the second and third factors. Addressing the second factor, the trial court explained that while plaintiff ostensibly did not help

Jane secure the Progressive policy, she was aware of the need for no-fault insurance, she was aware that Progressive insured Jane's vehicles, and she made insurance payments to Jane. The court additionally noted that plaintiff admitted that she never asked Jane to add plaintiff as an insured on the policy. As for the third factor, the trial court reiterated its conclusion that plaintiff spent time consuming alcohol with Roth just before the accident, and then she chose to get into Roth's vehicle with Roth driving. The court stated that plaintiff remained in Roth's vehicle for several miles despite Roth speeding and driving erratically. As a result, the court believed that plaintiff's negligent—if not reckless—conduct contributed to the accident. Therefore, the court concluded that Farmers failed to establish that the court erred by rescinding the policy with respect to plaintiff. The trial court ultimately denied Farmers's motion for reconsideration under MCR 2.119(F). This appeal ensued.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's determination regarding a motion for summary disposition." *Jostock v Mayfield Twp*, 513 Mich 360, 368; 15 NW3d 552 (2024) (quotation marks and citation omitted). "Under review de novo, a reviewing court gives no deference to the trial court and reviews the case with fresh eyes." *Buchanan v City Council of Flint*, 231 Mich App 536, 542 n 3; 586 NW2d 573 (1998). As previously explained by this Court:

> A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In ruling on a motion brought under (C)(10), "[t]he Court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." In addition, MCR 2.116(G)(4) requires that a motion under (C)(10) specifically identify and support the issues as to which the moving party believes there is no genuine issue regarding any material fact. When this is done, "an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her." [*Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021) (citations omitted; alteration in original).]

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475; 776 NW2d 398 (2009) (quotation marks and citation omitted). In determining whether a genuine issue of material fact exists, the court must consider the documentary evidence in the light most favorable to the nonmoving party. *Id*.

Pursuant to MCR 2.116(I)(2), the trial court may grant summary disposition in favor of the party opposing summary disposition "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment." When a party moves for summary disposition under MCR 2.116(C)(10), and the trial court grants summary disposition in favor of the opposing party under MCR 2.116(I)(2), this Court administers the standard of review for a motion under MCR 2.116(C)(10). *Cadillac Rubber & Plastics, Inc v Tubular Metal Sys, LLC*, 331 Mich App 416, 421-422; 952 NW2d 576 (2020). Further, "[i]f, after careful review of the evidence, it appears

to the trial court that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law, then summary disposition is properly granted under MCR 2.116(I)(2)." *Id*. at 422.

"The remedy of rescission is granted only in the sound discretion of the court." *Pioneer*, 331 Mich App at 404 (quotation marks and citation omitted). "An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes." *Id*. "The trial court's factual findings are reviewed for clear error, and a finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

## III. ANALYSIS

Farmers argues that Progressive was not entitled to extend the rescission of the no-fault insurance policy issued to Jane to plaintiff, an innocent third party. We agree.

No-fault insurance policies are governed by the mandatory coverage provisions in the no-fault act, and consequently, "the rights and limitations of the coverage are governed by that statute." *Titan Ins Co v Hyten*, 491 Mich 547, 554; 817 NW2d 562 (2012). "Insurance policies are contracts and, in the absence of an applicable statute, are subject to the same contract construction principles that apply to any other species of contract." *Id*. at 554. Further, "because insurance policies are contracts, common-law defenses may be invoked to avoid enforcement of an insurance policy, unless those defenses are prohibited by statute." *Id*. An insurer "may seek to avoid liability under an insurance policy using traditional legal and equitable remedies including cancellation, rescission, or reformation, on the ground of fraud made in an application for insurance, notwithstanding that the fraud may have been easily ascertainable and the claimant is a third party." *Id*. at 572-573. However, contractual defenses grounded in antifraud provisions within an insurance policy are unenforceable to the extent such defenses are abrogated by statute. *Meemic Ins Co v Fortson*, 506 Mich 287, 302; 954 NW2d 115 (2020).

Rescission of a policy *ab initio*, which "abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made," is a potential remedy for fraud perpetrated by the insured. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 408-409; 919 NW2d 20 (2018). However, because rescission constitutes an equitable remedy, and equitable relief is automatic, an insurer is not absolutely entitled to rescission as a remedy for fraud. *Id*. Rather, a trial court must balance the equities to determine whether the insurer is entitled to rescission, and it should not grant rescission if the result would be unjust or inequitable. *Id*. at 410-411. As previously stated, this Court has enumerated the relevant factors for evaluating the equities implicated by the remedy of rescission in cases involving innocent third parties:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent

insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Pioneer*, 331 Mich App at 411.]

"But the factors are not to be merely counted up, and the ultimate issue is which innocent party should bear the loss." *Farm Bureau Gen Ins Co v Ace Am Ins Co*, 337 Mich App 88, 108; 972 NW2d 325 (2021). The burden is on the party seeking rescission to establish that such a remedy is warranted. *Id*.

In the present matter, there is no dispute that plaintiff and Progressive are innocent parties to Jane's representations and omissions on the insurance application, such that the trial court was required to balance the equities to determine whether rescission was appropriate. The court resolved that the first four factors weighed in favor of rescission while the fifth factor was inapplicable to the case.

With respect to the first factor, the court concluded that Progressive maintained no duty to discover the alleged misrepresentation before the accident. But, as this Court has explained, "[t]he first factor does not impose a duty to investigate upon insurers . . .but merely addresses the process of procurement of insurance and any information disclosed." *Pioneer*, 331 Mich App at 412 n 6. Much like the circumstances in this case, in *Pioneer*, 331 Mich App at 400, the policyholder Vanetta Wright failed to identify Dana Harris, her adult son, as a driver or resident in her household on her application for no-fault insurance. Harris was subsequently injured in an accident while traveling as a passenger in a vehicle owned and operated by another individual. *Id*. This Court concluded that the first factor did "not truly weigh in either party's favor." *Id*. at 412. The Court reasoned that there was "no evidence to suggest that there could or could not have been a more diligent effort on [the insurance company's part] to discover contradictions or omissions in Wright's application any earlier." *Id*.

This Court further expanded upon that rationale in *Van Dyke*, ___ Mich App at ___; slip op at 1, 7-10, determining that the first factor weighed in favor of the third-party plaintiff because "had [insurer] defendant exercised due diligence, the insured's misrepresentations would have been discovered long before the accident occurred and the policy would have been rescinded before plaintiff provided any services to the insured." The Court reached this conclusion when the policyholder included a misrepresentation regarding her driving record in both her insurance application and renewal. *Id*. The *Van Dyke* Court additionally noted that the pertinent timeframe in examining the first factor is "not from when [insurer] defendant actually discovered the fraud, but from when the original insurance application was submitted to defendant (or shortly thereafter)." *Id*. at ___; slip op at 7. Thus, this Court opined, "Defendant could have discovered the fraud months in advance of the accident and rescinded the policy at that time instead of waiting until a claim was actually made before pulling [the policyholder's] driving record to determine if she was insurable." *Id*. at ___; slip op at 7-8.

In this case, the Progressive application expressly asked Jane to provide the members of her household, including other persons of driving age and minor children. However, Jane solely listed herself on the application. Rather than assessing the extent to which Progressive could have uncovered the fraud prior to plaintiff's injury, as required under the first factor, the trial court broadly concluded that Progressive had no duty to uncover the fraud before the subject incident. In doing so, the trial court failed to consider Progressive's actual ability to discover the

misrepresentations before the accident, including the timing of the original application and the relative ease of ascertaining the number of resident relatives in Jane's household—particularly given that Progressive did so less than one month after plaintiff filed her claim. See *Van Dyke*, ___ Mich App at ___; slip op at 9 n 35 (noting that while the Michigan Supreme Court overruled the "easily ascertainable" rule in *Titan*, 491 Mich at 573, such that an insurer may seek rescission based upon fraud in the application even if the fraud may have been easily ascertainable, "it remained logical to conclude that the easier it would have been to discover in advance of injury, the greater it should weigh against rescission"). Accordingly, the trial court improperly concluded that the first factor weighed in favor of Progressive on this basis. See *Van Dyke*, ___ Mich App at ___; slip op at 7-10; see also *Pioneer*, 331 Mich App at 412 n 6.

As for the second factor, whether the relationship between the fraudulent insured and the third party would suggest that the third party had knowledge of the fraud, this Court has advanced that "this factor looks to the relationship between the insured and the third party, suggesting that a close relationship allows for an inference that the third party knew of the fraud." *Farm Bureau*, 337 Mich App at 150. Plaintiff is Jane's daughter. However, there was no evidence that plaintiff was ever aware of the misrepresentation. Plaintiff testified that she knew that Jane insured her vehicles through Progressive, but nothing in the record suggests that plaintiff knew that Jane omitted the other household members from the application. See *Pioneer*, 331 Mich App at 412 ("The second factor, the innocent third party's potential knowledge of the fraud, weighs against rescission because there is no evidence that Harris was ever aware of Wright's representations."). Further, despite the trial court's contentions to the contrary, it is unreasonable to conclude—without more—that a person's general knowledge of the requirement to maintain no-fault insurance, coupled with awareness that a resident relative procured such a policy, equates to an understanding that the policyholder committed fraud or made material misrepresentations in obtaining coverage. See *Van Dyke*, ___ Mich App at ___; slip op at 10 ("Simply put, there is no reason to believe that plaintiff was aware of [the policyholder's] fraud until, after providing services for several months, defendant finally got around to rescinding the policy and denying plaintiff's claims.") Thus, the trial court incorrectly resolved that this factor weighed in favor of Progressive.

Turning to the third factor, whether the innocent third party acted negligently or recklessly in the course of the injury-causing event, the trial court concluded that this factor favored Progressive because plaintiff got into a vehicle with a driver who she knew consumed alcohol before driving and she remained in the vehicle while the driver drove erratically. While plaintiff drank alcohol before entering Roth's vehicle, she was the passenger and maintained no control over the operation of the vehicle. See *Pioneer*, 331 Mich App at 412 (explaining that the third factor weighed against rescission because Harris was simply a passenger and was not involved in the operation of the vehicle). Further, plaintiff testified that she yelled for Roth to stop before Roth drove through the second traffic signal. There was additionally no evidence that it would have been safe for plaintiff to attempt to leave the vehicle before the accident, particularly as plaintiff estimated that Roth was driving at a speed of approximately 80 to 90 miles per hour, or that plaintiff encouraged or advised Roth to drive after consuming alcohol. Considering the evidence in the light most favorable to the nonmoving party, there is, at minimum, a question as to the extent that plaintiff's conduct led to the accident.

Regarding the fourth factor, whether rescission would leave the third party without a means of recovery, the trial court appropriately weighed this factor in favor of Progressive because plaintiff may obtain benefits from Farmers, as the assigned insurer under the MACP, if Progressive is permitted to rescind the policy. To the extent that Farmers argues that the fourth factor will always weigh in favor of rescission, that is incorrect because the claimant may be "barred from recovery from a different insurer because of the one-year-back rule." *Farm Bureau*, 337 Mich App at 106 n 12. Further, this Court has observed that "the insurer presumably has the same ability to pursue recovery as does the provider. That is, if the insured procured the policy through fraud and the insurer is then obligated to pay a claim, presumably the insurer now has a fraud claim that it may pursue against the insured." *Van Dyke*, ___ Mich App at ___; slip op at 11.[3] Lastly, as recognized by the parties, the fifth factor, whether enforcing the policy would cause the insurer to have to provide tort liability for an at-fault insured, is inapplicable to the present case.

Because the trial court's analysis of the first, second, and third factors either applied an improper standard or was contradicted by the available evidence, the court erred by ruling that Progressive was entitled to rescind the insurance policy as to plaintiff. Accordingly, the trial court improperly granted summary disposition in favor of Progressive and denied summary disposition as to Farmers, because Farmers established a genuine issue of material fact regarding whether the balancing of the equities weighed in favor of rescission.[4]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen A. Feeney
/s/ Kristina Robinson Garrett
/s/ Mariam S. Bazzi

---

[3] Plaintiff additionally argues that the fourth factor favors recission because she would be entitled to $250,000 in coverage under the MACP, see MCL 500.3107c(1)(b), as opposed to $50,000 under the Progressive policy. It is unclear whether the amount of available coverage is relevant to the fourth factor should instead be considered as a separate factor. See *Wells v Citizens Ins Co of the Midwest*, unpublished per curiam opinion of the Court of Appeals, issued April 14, 2025 (Docket No. 3686730), p 14 (explaining that it is not apparent whether benefit limits are a relevant consideration for the fourth factor as opposed to a separate factor for the court to consider). Further, the trial court did not specifically address the differing coverage amounts in either its opinion and order granting summary disposition or its opinion and order denying Farmers's motion for reconsideration. Regardless, because the trial court erred in its analysis of the first, second, and third factors, its conclusion that rescission was warranted fell outside the range of reasonable and principled outcomes, rendering reversal and remand necessary.

[4] We decline to address whether the balancing of the equities weighs against Progressive rescinding the policy based on the potential impact to plaintiff's medical providers, as we have already determined that such rescission was improper as to plaintiff herself.